# EXHIBIT B

| | |
|---|---|
| **From:** | Bruce Allen <gbruceallen@gmail.com> |
| **Sent:** | Wednesday, August 12, 2020 5:20 PM |
| **To:** | John Moag |
| **Subject:** | I guess it was my fault |

The longtime partners of Snyder's were all once very close. It's hard to imagine that they are all buddy-buddy at this point and maybe forever.

It seems as if Snyder thinks that this was a coordinated plot (based on court filings) to get to the financial backing of Blair and perhaps the entire alleged scheme.

Have I heard the whispers and rumblings behind the scenes? Yes. Have people been talking on and off the record? Yes. Do I believe that this is a war that is heating up and perhaps ready to explode? Absolutely.

I can't say for sure that Snyder is going after Schar but again, it's hard, if not impossible to walk away not feeling that.

**The partners have long been frustrated with Snyder's lack of leadership and also were not happy with Bruce Allen.**


https://www.si.com/nfl/washingtonfootball/news/similar-reports-suggest-a-battle-

MOAG000147

| | |
|---|---|
| **From:** | Bruce Allen <gbruceallen@gmail.com> |
| **Sent:** | Saturday, October 31, 2020 12:25 PM |
| **To:** | John Moag |
| **Subject:** | Atheltic |

Daniel Snyder counsel outraged in court hearing on possible defamatory articles

By Daniel Kaplan Oct 30, 2020
Washington Football Team owner Daniel Snyder's counsel angrily responded in a court hearing Friday after a publisher's attorney said articles claiming Snyder is involved in sex trafficking and was linked to the late convicted pedophile Jeffrey Epstein were not defamatory under U.S. law.

Since those articles appeared on an India-based website in July, Snyder has been engaged in multi-jurisdictional legal actions designed to find who or what was behind them. One of those cases is in California federal court and designed to serve discovery in the U.S. on the website's parent, New Content Media.

"I'm not raising my voice yelling or screaming, I am outraged at the comment that these articles that are the subject of … the action would not have qualified as defamatory in the U.S.," Jordan Siev, Snyder's counsel with the Reed Smith law firm said during the virtual court hearing. "My client was falsely accused of sex trafficking and being associated with Jeffrey Epstein. There could be, frankly, nothing that would be (more) defamatory per se, that one could conjure up then than that. So we're on the record here. And I believe there's press on the line. That is an outrageous statement. And everything in those articles is defamatory. And in fact, the court in India has made a finding that we've proven a prima facie case based on the articles of defamation. So I just need that to be on the record."

Snyder's main case is in India, and it is largely directed at the same defendant, New Content Media, which is alleged to own the website, meaww.com (Media, Entertainment, Arts WorldWide), that published the articles.

"If you look at the allegedly defamatory submissions or articles, they would not qualify as defamatory under U.S. law," New Content Media's counsel, Joseph Meckes, of Squire Patton Boggs, said of the meaww.com articles. "And if that case (the lawsuit in India) had been brought here, I think I would have filed an anti-SLAPP motion."

Anti-SLAPP (Strategic Lawsuit Against Public Participation) laws are designed to prevent litigation intended to silence critics — usually the media — by burdening them with costly legal defenses.

"And what's happening here is Mr. Snyder is … (trying) to put the screws to my clients who are not well-heeled, honestly and I; there have been budget discussions about this, and they are on the verge of essentially throwing up their hands and saying, 'We don't care about this company in the U.S.,'" Meckes said.

It is believed Meckes' point about defamation would be twofold: Snyder is a public figure and as such, he would need to prove the authors of the articles had malicious intent. And the articles aggregated what was being said on social media. Of course, Snyder's point is that meaww.com may have posted the social media comments themselves or paid for them.

"That is exactly what we say happened here," Siev said in the court hearing. "There was paid content that was planted on the internet and then gathered up by MEAWW and published in a false article."

New Content Media hired Meckes only recently. Snyder filed the California action Aug. 7, and New Content Media only replied this week, arguing it had closed its only U.S. office in February and so was outside the jurisdiction of the court.

MOAG000159

Meckes told the judge at the hearing that New Content Media in late July filed with the California Secretary of State to disband its California operation, although paperwork did not appear on the agency's website until Oct. 12.

"You understand the seriousness of the skepticism on the other side of the table," U.S. Magistrate Judge Michael Wilner told Meckes, appearing to refer to the timing of New Content Media having notified California regulators shortly after the articles appeared and just before the California action was filed. "And it's not unwarranted."

Snyder is not suing New Content Media in California but asking the federal court to allow subpoenas of the company to search its U.S.-based servers and have access to any other documents. A different federal court already gave Snyder the go-ahead in a similar case.

In Eastern Virginia federal court, he is pursuing discovery of a former team employee, Mary Ellen Blair, who rents an apartment from the company controlled by team limited partner, Dwight Schar. The connect-the-dots theory is Schar, who is trying to sell his stake in the team, and Blair somehow were involved with the MEAWW articles, which Blair has denied. The idea is they are trying to sully Snyder to force him to sell the team. Thus far, no evidence has emerged publicly to support that theory.

In a Sept. 4 hearing the judge overseeing the case granted discovery and said it was not a "fishing expedition," Snyder's lawyer, in that case, Joe Tacopina told ProFootballTalk in a statement.

Wilner did not rule Friday, instead asking for more clarification from the parties about New Content Media's corporate status in California and if it did unregister, exactly when.


Mark S. Levinstein
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, DC 20005
202-434-5012
202-434-5029 (fax)
mlevinstein@wc.com


This message and any attachments are intended only for the addressee and may contain information that is privileged and confidential. If you have received this message in error, please do not read, use, copy, distribute, or disclose the contents of the message and any attachments. Instead, please delete the message and any attachments and notify the sender immediately. Thank you.

MOAG000160