# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Misc. Action No. 20-mc-00199-NRN

IN RE APPLICATION OF DANIEL SNYDER
FOR AN ORDER DIRECTING DISCOVERY FROM
JESSICA MCCLOUGHAN AND
FRIDAY NIGHT LIGHTS LLC
PURSUANT TO 28 U.S.C. § 1782

## ORDER

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter came before the Court on March 3, 2021 for argument on a discovery dispute specifically addressing whether and to what extent the Respondents, Jessica McCloughan and her company, Friday Night Lights, LLC, need respond to subpoenas issued in connection with an Indian defamation lawsuit (the "India Action"), brought by Daniel Snyder, principal owner of the Washington Football Team.

**Background**

On July 16, 2020, the defendant in the Indian Action published on its website, Media Entertainment Arts Worldwide (located at www.meaww.com) ("MEAWW"), articles about Mr. Snyder that contained defamatory statements, including the false allegation that Mr. Snyder was involved in sex trafficking and was on a list maintained by Jeffrey Epstein, the infamous sex criminal and financier. On August 7, 2020, Mr. Snyder sued the website and the authors of the article for defamation in The High Court of Delhi at New Delhi, India.

As part of the basis for the India Action against the owner of MEAWW, Mr. Snyder claims the following:

> MEAWW purports to be, and holds itself out as, a news website. MEAWW publishes "news" stories regarding a broad variety of matters, including pop culture, law and government, and media and entertainment.
>
> In reality, however, rather than being legitimate news sources and reporters, MEAWW intentionally sows disinformation at the behest of its undisclosed clients, including governments and intelligence services, and is often hired by clients that are cloaked behind several layers of anonymous corporate entities. MEAWW thus acts as a hired agent of these unnamed entities to knowingly spread, among other things, false and defamatory statements concerning its clients' rivals.

Dkt. #1 ¶¶ 15–16.

This miscellaneous action began in the District of Colorado when Mr. Snyder filed a Petition for Assistance in Aid of Foreign Proceeding Pursuant to 28 U.S.C. § 1782, asking the Respondents here, Mrs. Jessica McCloughan and her company, Friday Night Lights LLC, to provide discovery for use in the India Action.

Mrs. McCloughan is the wife of Scot McCloughan, the former general manager for the Washington Football Team. I am informed that Mrs. McCloughan's company, Friday Night Lights, LLC, is a holiday lighting display company. The purported need for the discovery from Mrs. McCloughan is that Mrs. McCloughan supposedly has relevant information concerning the alleged campaign of defamation against Mr. Snyder, directed by "hidden third party clients." Quoting from the Petition as to the relevance and arguable importance of Mrs. McCloughan's information to the India action:

> Petitioner has learned that a least one third party with close ties to at least certain of the minority owners of the Washington Football Team, formerly known as the Washington Redskins (the "Team")—of which Petitioner is the majority owner—communicated with Mrs. McCloughan—the wife of the former Team

2

> general Manager, Scot McCloughan, and the owner and registered agent of Friday Night Lights—numerous times on a telephone number registered to Friday Night Lights. These phone calls occurred in and on the days prior to and immediately following the publication of the Defamatory Articles.

Dkt. #1 ¶ 4.

The third party in question is Mary Ellen Blair, the former executive assistant to Mr. Snyder, who left her employment on bad terms. Mr. Snyder has alleged in other federal court filings that Ms. Blair "is an active participant, for pay from third parties, and/or arising from personal animus, in the same campaign of defamation against Petitioner that led to the publication of the subject defamatory articles, including serving as a source for the false and libelous claims in said articles." Mr. Snyder has additionally alleged that Ms. Blair, "further directly offered or alluded to the availability of bribes to current employees of the Team and the Petitioner, attempting to elicit further false statements about Petitioner to be published by MEAWW and other outlets." *See In re Application of Daniel Snyder for an Order Directing Discovery from Mary Ellen Blair and Comstock Holding Companies, Inc. Pursuant to 28 U.S.C. § 1782*, 20-mc-00023 (E.D. Va., 2020), Ex Parte Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782, at ¶¶ 4–5, filed August 10, 2020.

Also potentially important to this conspiratorial saga was the publication, on July 16, 2020, of a damning article in The Washington Post about alleged sexual harassment and verbal abuse of women employees for the Washington Football Team and female reporters covering the organization. The article, titled "From Dream Job to Nightmare," detailed the frequent sexual harassment and verbal abuse experienced by fifteen female employees with the Team over many years. The Post article was written

3

by reporters Will Hobson and Liz Clarke. The article involved interviews with more than 40 current or former employees of the Washington Football Team and a review of text messages and internal company documents. The defamatory articles published on the MEAWW website had speculated that the to-be-published Post article might include allegations about Mr. Snyder's sexual misconduct and a relationship with Mr. Epstein. But, in fact, the Washington Post article included no such references.

According to published reports, the fallout from the Post article was swift and wide-ranging, with a number of Washington Football Team executives resigning, the Team hiring a former federal prosecutor to investigate the allegations of systemic harassment within the organization, and prompting the National Football League itself later to take over the investigation of the harassment charges. *See* Nick Turner, *Washington NFL Team Hires Law Firm to Review Harassment Claims*, Claims Journal, July 17, 2020 (found at: https://www.claimsjournal.com/news/national/2020/07/17/298260.htm); Stephen Whyno, *NFL takes over investigation of Washington Football Team*, AP, August 31, 2020 (found at https://apnews.com/article/1378e0c662183592dd40b5b0b08fde8b). In short, the Washington Post article was embarrassing for the Washington Football Team organization and likely very embarrassing for Mr. Snyder, the majority owner. But the Washington Post article is not the subject of the India Action, nor any other legal action, as far as the Court is aware.

Another element to this alleged conspiracy to defame Mr. Snyder is an ongoing dispute between the Mr. Snyder and the minority owners of the Washington Football Team. The minority owners apparently want to sell their shares in the club or remove

4

Mr. Snyder from his majority ownership position. It appears that Mr. Snyder's theory is that someone affiliated with a minority owner is somehow working with Ms. Blair to plant defamatory and embarrassing articles (such as ones false associating Mr. Snyder with sex trafficker Jeffrey Epstein) in order to put pressure on Mr. Snyder to sell his shares in the Team. In support of this theory, Petitioner's counsel says that he has evidence that Ms. Blair was in telephone contact with the minority owners (or someone affiliated with the minority owners) shortly before the Indian website articles were published. There are also allegations (found in the Petition filed in the Eastern District of Virginia) that Ms. Blair has had financial difficulties and is living in an apartment that is beyond her financial means and owned by someone affiliated with the Washington Football Team's minority owners.

**The Subpoenas to Mrs. McCloughan and her company.**

As the Petitioner notes, on November 25, 2020, this Court granted, on an ex parte basis, Mr. Snyder's Petition for Assistance in Aid of Foreign Proceeding, giving leave to serve the Mrs. McCloughan and Friday Night Lights with four subpoenas, found at Dkt. ##1-2 through 1-5. The order was issued without notice to Mrs. McCloughan and Mrs. McCloughan had no opportunity to weigh in on the overbreadth, burdensome, or invasive nature of the requested discovery. Without input from Mrs. McCloughan, and based solely on the representations of Petitioner's counsel, the Court found that the "discovery sought supports and relates directly to the claims asserted in the Indian Action." Dkt. #2 at 5. The Court also found the requests "not unduly intrusive or burdensome." *Id.* at 5. The Court nevertheless notes that the "Respondents may file a

5

motion to quash or modify the subpoena under the Fed. R. Civ. P. 45(c)(3) or may seek a protective order under Fed. R. Civ. P. 26(c)." *Id.* at 5–6.

The document Subpoenas generally required ESI searches for and production of:

- All Documents and Communications concerning Mr. Snyder, including but not limited to emails, text messages, and/or phone records.

- All Documents and Communications concerning the Washington Football Team, including but not limited to emails, text messages, and/or phone records.

- All Documents and Communications concerning MEAWW and/or any affiliates, agents or employees thereof, including but not limited to emails, text messages, and/or phone records.

- All Documents and Communications concerning the Defamatory Articles and/or any actual or anticipated negative publicity concerning Mr. Snyder, including but not limited to emails, text messages, and/or phone records.

- All Documents and Communications between Mrs. McCloughan and any third party concerning Mr. Snyder, the Defamatory Articles and/or any actual or anticipated negative publicity concerning Mr. Snyder, including but not limited to emails, text messages, and/or phone records.

- All Documents and Communications with Ms. Mary Ellen Blair, including but not limited to emails, text messages, and/or phone records.

The timeframe specified was from January 1, 2020 "to the present."

Having been served with the subpoenas, at the direction of her own counsel, Mrs. McCloughan searched her cell phone for text and Twitter communications relevant to the subpoenas and produced a few documents reflecting communications with Ms. Blair, and a reporter for The Washington Post, which Petitioner describes as "client-gathered screenshot images showing partial text and Twitter communications relevant to the subpoena." Petitioner insists these indicate that "further responsive documents exist but were not produced." Dkt. #8-1 at 1. According to Petitioner, Mrs. McCloughan

6

also "failed entirely to produce any emails or phone records" as requested in the subpoenas.

Counsel for Petitioner says that he attempted to engage with counsel for Mrs. McCloughan and offered to have a third party ESI provider review (at Mr. Snyder's expense) Mrs. McCloughan's cell phone for relevant communications. Petitioner proposed 58 ESI search terms, which, in the Court's view, go far beyond anything related to the defamatory MEAWW articles and appear, instead, to be seeking, for example, any references to Mr. Snyder and sexual harassment, the Washington Football Team and sex discrimination, and former coach Jay Gruden and sex or sex discrimination.

In addition, Petitioner wants an exhaustive list of telephone toll records and emails, including any communications with The Washington Post or its reporters. Again, these documents seem not to have any direct relevance to the India Action, as The Washington Post article, while it may have been embarrassing to the Washington Football Team organization and to Mr. Snyder, is not alleged to be untrue in any respect and is not the subject of litigation either in India or the United States.

Indeed, the breadth of the search terms proposed, coupled with the professed desire to obtain evidence of any communications between Mrs. McCloughan and The Washington Post's reporters, indicates that the subpoenas directed at Mrs. McCloughan may be less of a bona fide effort to obtain evidence supportive of the claims brought in the Indian Action, than they are an effort to burden and harass individuals formerly associated with the Washington Football Team who may have acted as sources for The Washington Post story.

Counsel for Mrs. McCloughan appeared on her behalf at the March 3, 2021 discovery dispute hearing. Counsel also submitted Mrs. McCloughan's position statement regarding her compliance with the subpoenas, consistent with this Court's practice standards on discovery disputes. I do not find that Mrs. McCloughan waived her right to object to the breadth and scope of the subpoenas. At the discovery dispute hearing, Mrs. McCloughan's counsel explained that Mrs. McCloughan had never communicated with anyone about any connection between Snyder and Jeffrey Epstein. Upon receipt of the subpoena, Mrs. McCloughan was instructed by her counsel to go through her phone and "screen shot" all texts that were responsive to the subpoena. She did so. Her counsel then produced the screen shots to the counsel for Mr. Snyder. When Mr. Snyder's counsel then asked for greater production, counsel for Mrs. McCloughan again asked her to go through her phone and look for anything to do with subpoena and she "found nothing more." Dkt. #8-1 at 4. Mrs. McCloughan objects that the requests found in the subpoenas are overbroad, unduly burdensome to a non-party, and that she has substantially complied to the best of her ability. In addition, Mrs. McCloughan objects that the requests are all duplicative of information available from Ms. Blair or others. Mrs. McCloughan argues that this is nothing more than a harassing fishing expedition.

Counsel for Mrs. McCloughan did offer that if Petitioner is worried that Mrs. McCloughan "missed" something in her review of her telephone, including e-mails, counsel is prepared to personally review the phone to ensure that nothing related to communications with Ms. Blair or anyone associated with the Indian website was missed.

8

On the afternoon of the discovery hearing, Petitioner's counsel submitted a list of specific telephone numbers for which Petitioner wants the records of calls from Mrs. McCloughan's phone from the period from April 1, 2020 through July 18, 2020. These include two numbers for Ms. Mary Ellen Blair, four separate numbers for The Washington Post (including three reporters for the Post), and two numbers for the specific Indian individuals alleged to have written (or been involved with writing) the defamatory MEAWW articles.

**Decision**

The Court has reviewed and considered the submission of the Parties and heard their arguments. A court may exercise its inherent authority to quash or modify an unduly burdensome subpoena. *See Griggs v. Vanguard Grp., Inc.*, No. CIV-17-1187-SLP, 2019 WL 3058982, at *1 (W.D. Okla. May 7, 2019) ("The Court can (and, here, does) issue a protective order to guard the [ ] nonparties from unnecessarily burdensome discovery regardless of whether Plaintiff, herself, has standing to assert specific objections to the subpoenas issued by Defendants.") (collecting cases); 9A Wright & Miller, *Federal Practice and Procedure* § 2463.1 (3d ed.) (explaining that "[f]ederal courts always have had the inherent power to protect persons subject to subpoena from undue burden" but that Rule 45(d)(3)(A) requires a court to quash a subpoena imposing an undue burden upon a timely motion).

I conclude the following:

1. Petitioner's efforts to obtain extensive cell phone records and texts messages from Mrs. McCloughan appears to a fishing expedition, without significant factual justification.

2. The link between Mrs. McCloughan and the defamatory Indian publications is tenuous at best. Petitioner hypothesizes that because Mrs. McCloughan, the

9

spouse of the former general manager for the Washington Football Team, talked on a number of occasions to Ms. Blair around the time of the Indian articles, and also talked to a reporter for The Washington Post, then she could be part of (or have information about) the alleged conspiracy to defame Mr. Snyder by planting fake sex trafficking stories on the Indian website.

3. A much more rational explanation for the communications between Ms. Blair and Mrs. McCloughan is that former employees (or a spouse of an employee) of the Football Team were discussing the nationally publicized Washington Post article (which appeared the same time as the Indian articles), and for which they may or may not have acted as sources. More important, whether Mrs. McCloughan or Ms. Blair were sources for The Washington Post is completely irrelevant to the issue of the defamatory Indian articles. The Washington Post article is not the subject of any litigation. Efforts to learn whether Mrs. McCloughan communicated with The Washington Post are improper, unnecessarily invasive, and being done for what the Court perceives is an improper purpose—to discover the sources for the embarrassing and damning The Washington Post story—rather than the proper purpose of discovering evidence about the defamatory Indian website publications. Even if this were not the intent of the subpoenas, it certainly has an adverse and chilling effect when persons who communicate with reporters on a story are at risk of having their phone records searched without substantial justification. I find that justification lacking here.

4. I conclude that Mrs. McCloughan has substantially complied with the relevant and appropriately limited aspects of the subpoenas. That said, it would be appropriate for her counsel to personally inspect her cell phone for any additional or missed communications with Ms. Blair regarding Mr. Snyder or any communications with MEAWW, or persons affiliated with MEAWW or the Indian articles, including specifically, Anay Chowdhary, Nirnay Chowdhary, Prarthna Sarkar and Jyotsna Basotia. There is no justification for requiring Mrs. McCloughan to produce phone records or text messages or e-mails with the Washington Post or its reporters.

For the forgoing reasons, it is **HEREBY ORDERED**:

1. Respondent Mrs. McCloughan shall, within five business days from the date of this Order, provide to her counsel, Peter Schaffer, her cellular phone. Mr. Schaffer will review and search the phone for text messages or e-mails between Mrs. McCloughan, on the one hand, and Mary Ellen Blair, Anay Chowdhary, Nirnay Chowdhary, Prarthna Sarkar, or Jyotsna Basotia, on the other. The date range for the search shall be between May 1, 2020 and July 18, 2020. Text messages or e-mails will be deemed relevant if they relate to or discuss Daniel Snyder, the Washington Football Team or its ownership, the MEAWW website, or any anticipated or published articles on the MEAWW website. Any relevant e-mails or text messages shall be produced to counsel

10

for Petitioner within 10 business days from the date of this Order. Also within 10 days from the date of this Order, Mr. Schaffer will file a certification with the Court as to the search he has conducted and what, if anything, he has found, beyond documents already produced. If counsel for Mrs. McCloughan has questions about the relevance of any potentially responsive e-mails or text messages, he shall file such e-mails or text messages with the Court under appropriate restriction for *in camera* review; it is further ORDERED:

2. Respondent Mrs. McCloughan shall provide to Petitioner, within 10 days from the date of this Order, telephone call records (reflecting date of call and duration of call) reflecting telephone communications (either incoming or outgoing) between Mrs. McCloughan and the numbers listed below. The date range for responsive telephone numbers is also May 1, 2020 through July 18, 2020:

   a. Mary Ellen Blair: 323-791-9312 and 571-612-0088;

   b. Indian defendants (Anay Chowdhary, Nirnay Chowdhary, Prarthna Sarkar and Jyotsna Basotia, or anyone associated with the MEAWW website): including 91 95136 92636; (963) 022-8683 or any phone numbers starting with "91" and "963" – indicating an Indian phone number.

3. For avoidance of all doubt, Mrs. McCloughan need not search for and need not produce call records, e-mails, or text messages between her and The Washington Post or its reporters.

**SO ORDERED.**

Date: March 5, 2021

*N. Reid Neureiter*
N. Reid Neureiter
United States Magistrate Judge

11