Stephanie J. Quincy, SBN 014009
quincys@gtlaw.com
Aaron J. Lockwood, SBN 025599
lockwooda@gtlaw.com
GREENBERG TRAURIG, LLP
2375 E. Camelback Road, Suite 700
Phoenix, Arizona 85016
(602) 445-8000

*Attorneys for Respondent Bruce Allen*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re Application of Daniel Snyder for an Order Directing Discovery from Bruce Allen Pursuant to 28 U.S.C. § 1782 | Case No. 2:21-mc-00022-SPL<br><br>**REPLY IN SUPPORT OF RESPONDENT BRUCE ALLEN'S MOTION FOR EVIDENTIARY HEARING ON MOTION TO VACATE EX PARTE ORDER AND QUASH SUBPOENAS OR FOR PROTECTIVE ORDER** |

Petitioner Snyder opposes Respondent Allen's Motion for Evidentiary Hearing by mischaracterizing this matter as a "simple discovery dispute." Snyder surely would have liked for Allen simply to hand over his personal email, texts, and phone records for Snyder to do whatever he wanted with them, but that is not how 28 U.S.C. §1782 works. Far from being "simple," this matter is a unique, ancillary proceeding arising from a foreign lawsuit—to which Allen is not a party—under authority of federal statute. Unlike typical discovery between U.S. litigants, Snyder's ability to invoke that authority turns on the *factual predicate* for Snyder's belief that Allen has relevant information, Snyder's *intent* in seeking Allen's personal documents, and the *purpose* to which Snyder will put those documents, if granted access to them. Indeed, it is undisputed federal law that

Snyder cannot invoke §1782 if he does so in bad faith, for purposes of harassment, or to seek irrelevant information. *E.g.*, *United Kingdom v. United States*, 238 F.3d 1312, 1319 (11th Cir. 2001). It is also undisputed that Snyder and his counsel carry the obligations to avoid imposing undue burden or expense and to avoid unreasonably expanding federal-court proceedings. Fed. R. Civ. P. 45(d); 28 U.S.C. §1927.

But Snyder's filings in this matter have raised material factual disputes as to whether he has satisfied these requirements, or whether he asserted his §1782 Petition pretextually to gain access to Allen's personal life. While Allen's Motion bullet-pointed several examples of such disputes, Snyder's Response failed to address them, other than to summarily characterize them as "irrelevant." As such, Snyder *still* has offered no explanation as to how Allen's personal documents could be "for use" in litigating Snyder's defamation claims in the Indian Action. Snyder *still* has offered no explanation how Allen's communications with John Moag logically link Allen to the Indian Action— much less how Allen's communications, if any, with Jeffrey Pash (the NFL's General Counsel) or Melanie Coburn (a former Team cheerleader and outspoken critic of Snyder) have any bearing whatsoever on this matter. Instead, Snyder merely continues to assert that "the requested discovery is for use in the Indian Action" and that "[o]f course, Respondent has no information or evidence to the contrary." (Resp. at 5.) This assertion is not only false, but obstinately ignores the record that has been created in this proceeding.

Perhaps more critically, Snyder has yet to offer *a single avowal* directed to these issues that might support his request to invade Allen's personal life. At the same time, Snyder's Opposition to Allen's Motion to Vacate the *Ex Parte* Order and Quash Subpoenas rested almost entirely on an unfounded attack on Allen's credibility (and character) based on years' old email from Allen's former redskins.com account. To be clear, those business email (to which Snyder apparently still has access) provide no support for the compelled disclosure of Allen's *personal* information. Yet, doubling down on this attempt to impeach Allen, Snyder's instant Response asks the Court to

weigh Allen's credibility based on a supposed conflict between Allen's declaration and the content of those email. (Resp. at 5.) As Snyder's Response puts it, "[t]he Court has Mr. Allen's own words (both in his declaration and his contemporaneous emails with reporters) in black and white, and easily can consider whether those emails cast doubt on his claimed basis for avoiding the requested discovery." (*Id*. at 6.) This Court should not countenance this attempt to impose a double standard on whose credibility should be considered: *Snyder* carries the burden of persuasion here, and the Court should have the opportunity to consider the veracity of *Snyder's* claimed basis for seeking the requested discovery from Allen.[1]

Put bluntly, Snyder's blitz of §1782 actions, reliance on an amorphous "campaign of defamation," and baseless *ad hominem* attacks on Allen in this proceeding all give Allen well-founded concerns that Snyder seeks to exploit the §1782 power to bully Allen into handing over copies of his personal devices (subject only to his counsel's privilege review) for Snyder's general use. The mere fact that Snyder's counsel can say in court filings that someone unknown to Snyder from somewhere in the world once alleged online that Snyder was linked to Jeffery Epstein and sex trafficking does not suffice either to satisfy §1782 requirements or to allay Allen's concerns. Accordingly, there is nothing incongruous in Allen opposing Snyder's Petition for broad access to his personal documents *and* requesting an evidentiary hearing on the propriety and scope of that Petition. *Both* filings seek to protect Allen from a pretextual invasion of his privacy being pursued in bad faith.

---

[1] Remarkably, and without *any* explanation, Snyder *still* has not provided Allen with an unredacted copy of the redskin.com email that he filed with the Court. Thus, only Snyder has the full content of those email "in black and white" for purposes of weighing whether they cast any doubt on Allen's declaration testimony. Nevertheless, even as redacted, those exhibits confirm that *Allen never requested to be an anonymous or off-the-record source* in those few instances in which he communicated with reporters during his time with the Team. Snyder's attempt to impeach Allen therefore falls flat. (*Cf.* Resp. at 5.)

3

## ARGUMENT

**I.     Nothing in the Local Rules overrides the Court's discretion to hold an evidentiary hearing.**

Relying on the Local Rules, Snyder quibbles with various aspects of Allen's Motion for Evidentiary Hearing. First, he argues that Allen's request was late. (Resp. at 3-4.) The Local Rules, however, did not require Allen to request an evidentiary hearing when filing his Motion to Vacate, and, as Snyder concedes, Allen did request oral argument at that time. (*Id.* at 4.) The full scope of the factual and credibility issues also did not become clear until after Allen filed his Motion to Vacate, when the parties continued to confer over the Petition and Subpoenas, and then when Snyder filed his Opposition. While Snyder's Opposition went to great lengths to try to impeach Allen's declaration testimony, Snyder gave no testimony in support of his position. Rather, Snyder's counsel submitted a declaration attesting to new facts and conclusions, including as to the content of documents not in the record in this proceeding.

Second, Snyder argues that Allen's counsel failed to complete meet-and-confer discussions with Snyder's counsel sufficiently in advance of the Motion. It is true that Allen's counsel thought Snyder's counsel would see the need for an evidentiary hearing, and that Allen's request might be unopposed. (It obviously was not.) However, there was no requirement that Allen's counsel meet and confer at all before filing the Motion for Evidentiary Hearing—much less a requirement that Allen's counsel pursue extended negotiations (which would have been futile in any event).

Third, Snyder argues that Allen's request should be denied because it lacked a proposed order in violation of Local Rule 7.1(b)(2). That Rule states only that, "[i]n civil cases when a party requests specific relief, except for dismissal or summary judgment pursuant to Federal Rules of Civil Procedure 12(b) or 56, the party must submit a proposed order as an attachment to the motion or stipulation." Allen's Motion included a proposed order in compliance with this requirement. (Doc. 21-1.) Snyder fails to

specify what else Allen's proposed order supposedly should have said that was not already explained in the Motion itself to satisfy this Rule.

In short, Snyder's "procedural" challenges are misplaced, and the Court should disregard them.

**II.    The Court should exercise its discretion to hold an evidentiary hearing to aid in the resolution of material factual and credibility issues.**

Snyder argues that the Court should vacate the evidentiary hearing because it is not *required* to hold such a hearing in this context and because Allen's Motion lacked citations to binding case law on this point. (Resp. at 5.) It is, of course, within the Court's sound discretion whether to hold the hearing and to decide what issues the hearing will address. And the factual differences in Allen's cited authorities that Snyder raises are immaterial. In focusing on such strawman arguments, Snyder's Response fails to address adequately the material issues *in this case*.

For example, Snyder contends that "the filing or pendency of other Section 1782 petitions is irrelevant to the petition granted by this Court." (Resp. at 5.) But Snyder has not filed just one or two other §1782 proceedings. He has initiated *at least a dozen* such actions against a wide range of individuals and entities—most of which have no apparent connection to the Indian Action. (*See* Doc. 8-3, Mot., Ex. C.) Snyder's extensive use of this powerful discovery tool casts doubt on his stated purpose for invoking it here.

Snyder likewise contends that "[a]ny concerns as to the intended use of the discovery easily can be dealt with through a proper protective order." (Resp. at 5.) Even carefully crafted Protective Orders, however, are not foolproof. And Snyder has already shown his willingness to use what were intended to be Allen's confidential business email from his old redskins.com account for an improper purpose—that is, in a manner that maligned Allen and third parties in the public record. (*See* Docs. 15-2 to 15-32; Docs. 19-1 to 19-20 (unredacted to show non-party senders and recipients).) Snyder also has shown his willingness to use evidence obtained in another §1782 proceeding outside the Indian Action. Specifically, from the outset of this matter, Snyder has relied on

confidential information obtained from his §1782 action against Moag. As Snyder's counsel has attested:

> After Mr. Allen's separation from the Team at the end of 2019, Mr. Allen had no business reason to remain in contact with Mr. Moag. Yet Mr. Allen remained in extensive contact with Mr. Moag…. In fact, *based on my review of Mr. Moag's phone records*, Mr. Allen and Mr. Moag spoke 87 times between January and November 2020….

(Doc. 15-1 at 9-10, ¶¶ 27-29 (emphasis added).) This use of §1782 discovery (from Moag) in an effort to bootstrap a factual predicate for further §1782 discovery (from Allen) again raises questions as to whether Snyder in fact intends to use Allen's personal information for some unstated purpose (perhaps to bootstrap together allegations for another §1782 action against the NFL's General Counsel).

Moreover, Snyder's Response fails to address the sheer breadth of his Subpoena, which he has only sought to expand during this proceeding. As other courts have recognized, unjustifiably broad §1782 requests call into question their stated purposes. *See, e.g.*, *In re O2CNI Co.*, No. C 13-80125 CRB (LB) at *24 (sweeping requests suggest petitioners "are seeking the information for their own use and not for use in the Korean criminal case"); *Lazaridis v. Int'l Centre for Missing*, 760 F. Supp. 2d 109, 115 (D.D.C. 2011) ("wide-ranging request suggests that [petitioner] is seeking information more for his general use than for use by the Greek tribunals").

Snyder's argument that perhaps undermines his position the most is that "the evidence submitted [*i.e.*, Allen's old redskins.com email] should be used by the Court in weighing the veracity of [Allen's declaration] statement as a basis for Mr. Allen seeking to block discovery against him." (Resp. at 5-6.) In other words, Snyder argues that the Court should reject Allen's opposition to the Petition because Allen cannot be trusted when he says that he has nothing even potentially relevant to the Indian Action. But this argument that the Court should weigh credibility applies with greater force to Snyder, who carries the burden of persuasion in this matter, who did not verify his Petition or

offer any testimony in support of it, and who has yet to set forth a cogent explanation for seeking Allen's personal information.

Consequently, if the Court continues to validate Snyder's Petition and enforce his Subpoenas based on the current record, it would be giving greater credence to unsupported statements in Snyder's court filings than to Allen's declaration testimony under penalty of perjury. To maintain the integrity of this proceeding, the Court should require Snyder to testify to the numerous assertions and accusations he has made in this matter through counsel.

### III. An evidentiary hearing would assist the Court in evaluating Allen's request for sanctions.

Snyder contends that Allen's request for an award of his fees and costs as a sanction fails to warrant an evidentiary hearing because "[t]he purpose of holding an evidentiary hearing in connection with a motion for sanctions is to protect the non-moving party's due process rights." (Resp. at 7.) Although Snyder may be able willing to waive the due-process protections that an evidentiary would provide, this does not end the inquiry. The critical question is whether an evidentiary hearing would aid the Court. *See, e.g.*, *Wilson-Simmons v. Lake County Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (a district court has discretion "to determine whether an evidentiary hearing would assist the court in its decision"); *Simmerman v. Corino*, 27 F.3d 58, 64 (3d Cir. 1994) (in determining sanctions, "[t]here may be times when an oral or evidentiary hearing will be necessary to aid in the court's factfinding").

Here, Allen's request for sanctions implicates more than the paper record and Snyder's litigation conduct. It requires an assessment of Snyder's intent and credibility—issues for which an evidentiary hearing is valuable. *See, e.g.*, *Donaldson v. Clark*, 819 F.2d 1551, 1561 (11th Cir. 1987) ("when a court is asked to resolve an issue of credibility or to determine whether a good faith argument can be made for the legal position taken, the risk of an erroneous imposition of sanctions under limited procedures and the probable value of additional hearing are likely to be greater"). As such, the Court should

take advantage of its ability to hear directly from Snyder in assessing whether and to what extent sanctions are warranted.

## CONCLUSION

For the foregoing reasons, the Court should hold the currently scheduled evidentiary hearing consistent with the terms of its July 9, 2021 Order. (Doc. 22.)

Respectfully submitted this 22nd day of July 2021.

GREENBERG TRAURIG, LLP

By: */s/ Stephanie J. Quincy*
    Stephanie J. Quincy, SBN 014009
    Aaron J. Lockwood, SBN 025599
    *Attorneys for Respondent Bruce Allen*

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

**CERTIFICATE OF SERVICE**

I hereby certify that on July 22, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gregory J. Marshall
Patrick A. Tighe
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
gmarshall@swlaw.com
ptighe@swlaw.com

Jordan W. Siev
REED SMITH LLP
599 Lexington Avenue, 22nd Floor
New York, New York 10022
jsiev@reedsmith.com

*Attorneys for Petitioner Daniel Snyder*

By: */s/ Carolyn Smith*
Employee, Greenberg Traurig, LLP